**United States Court of Appeals**
**Fifth Circuit**
**F I L E D**
**October 28, 2003**
Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-41327

UNITED STATES OF AMERICA

Plaintiff-Appellee,

VERSUS

ROBERTO ALEJANDRO REYES

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

%
Before EMILIO M. GARZA and DENNIS, Circuit Judges, and DUPLANTIER, District Judge

DUPLANTIER, District Judge:

After entering a conditional plea of guilty of possession with intent to distribute in excess of

500 grams of cocaine, defendant-appellant Reyes appeals the denial of his motion to suppress

evidence. We affirm.

FACTS AND PROCEEDINGS BELOW

On December 6, 2001 Roberto Alejandro Reyes arrived at the El Expresso Bus Station in Brownsville, Texas carrying a blue suitcase. An unidentified companion accompanied Reyes. Both men boarded a bus destined for Dallas.

With the consent of the El Expresso Bus Company, U.S. Border Patrol Agent David Morales, a certified dog handler, had his dog[1] search the cargo compartment of the bus boarded by Reyes. Had the search of the compartment proved uneventful, Morales intended to board the bus without the dog and conduct an immigration check of the passengers.

During the search of the cargo compartment, the dog alerted to the blue suitcase previously carried by Reyes. Pursuant to Agent Morales's request that he locate the owner of the blue bag, the man loading bags into the cargo compartment boarded the bus and returned with Reyes's companion, who claimed ownership and consented to a search of the bag. That search revealed no contraband. However, in response to questioning by Agent Morales, Reyes's companion admitted that he had smoked marijuana that morning before arriving at the bus station. Agent Morales allowed Reyes's companion to re-board the bus. During Agent Morales's interaction with Reyes's companion, the dog did not alert to him.

Intending to remove the dog from the area of the bus, Agent Morales walked with the dog in front of the open door of the bus, at which point the dog jumped into the passenger compartment. Agent Morales interpreted the dog's behavior as indicating that the dog was alerting to the smell of narcotics or to a concealed person in the passenger compartment. Agent Morales asked the bus

---

[1] The dog was trained and certified to detect concealed people, heroin, cocaine, marijuana, and methamphetamine.

driver to get the passengers off the bus so that the dog could search the passenger compartment. The bus driver told the passengers "[y]ou need to get off the bus because the immigration official needs to get on to check the bus."

Agent Morales then walked toward the front of the bus and stood with the dog approximately four to five feet from the passenger door of the bus. The bus was on the right side of Agent Morales, and the dog was on his left side. As passengers exited the bus they walked within four to five feet of the dog. After exiting the bus, the passengers were not required to remain in a designated area.

The dog did not alert to any of the passengers until Reyes and his companion exited the bus. At that point the dog alerted to an odor and pulled Agent Morales toward Reyes and his companion, both of whom then entered the bus station. Agent Morales followed the men. Once inside the station, Reyes and his companion began to separate. After the men separated, the dog briefly alerted to Reyes and then walked back and forth between the two men, barking and following them. Agent Morales asked the men to stop and to approach him.

After asking Reyes to sit, Agent Morales questioned the companion, who again stated that he had smoked marijuana earlier in the day. Based on his experience and training, Agent Morales was concerned about the presence of weapons, because he knew that weapons often accompany narcotics. In response to a request by Agent Morales, Reyes's companion emptied his pockets and lifted his shirt. No contraband was found. After completing his search of the companion, Agent Morales asked Reyes to stand. When Agent Morales asked Reyes if he had smoked any marijuana or done any drugs, the companion responded that Reyes had not smoked anything. Agent Morales asked Reyes to empty his pockets and lift his shirt. When Reyes lifted his shirt, Agent Morales saw a bundle taped to Reyes's back. Reyes then ran and abandoned the bundle before he was

3

apprehended by Agent Morales. Agent Morales retrieved the bundle, which contained cocaine.

A grand jury indicted Reyes on one count of knowingly and intentionally conspiring to possess in excess of 500 grams of cocaine with intent to distribute (21 U.S. C. §§ 846, 841(a)(1), and 841(b)(1)(B)) and one count of possessing in excess of 500 grams of cocaine with intent to distribute (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)). Reyes moved to suppress the seized cocaine. Following a hearing on the motion to suppress, the district judge denied the motion. Thereafter, Reyes entered a conditional plea of guilty to possession in excess of 500 grams of cocaine with intent to distribute (21 U.S.C. §§841(a)(1) and 841(b)(1)(B)), reserving his right to appeal the denial of his motion to suppress. The district judge sentenced Reyes to a 28 month term of imprisonment and a five year term of supervised release. Reyes timely appealed his conviction.

## STANDARD OF REVIEW

"In considering a ruling on a motion suppress, we review the district court's factual findings for clear error and its legal conclusions, including its ultimate conclusion as to the constitutionality of the law enforcement action, de novo." *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002) (citing *United States v. Carreon-Palacio*, 267 F.3d 381, 387 (5th Cir. 2001)). The evidence is viewed in the light most favorable to the prevailing party. *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000).

## SEIZURE OF PASSENGERS

Defendant urges that Agent Morales unreasonably seized the passengers by forcing them off the bus after the dog alerted to the passenger compartment of the bus. We need not address whether the bus driver's request, at the behest of Agent Morales, that the passengers exit the bus, constituted a seizure of the passengers, including the defendant. Assuming *arguendo* that there was a seizure,

considering the totality of the circumstances, it was clearly reasonable. "Reasonableness . . . depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975)) .

The dog's alert to the passenger compartment of the bus constitutes probable cause for Agent Morales to lead a canine search of that compartment. *United States v. Duffaut*, 314 F.3d 203, 208 (5th Cir. 2002). Following the dog's strong alert to the passenger compartment, Agent Morales would have been derelict in his duty if he had failed to search that compartment of the bus. Considering the totality of the circumstances, including the close confines of the interior of the bus, Agent Morales' extensive knowledge of the dog , and concern for the safety of the passengers, we should not second-guess the agent's decision to comply with Border Patrol policy and require the passengers to exit the bus prior to commencing the search of the passenger compartment. Our conclusion that it was reasonable under the circumstances to have the passengers exit the bus prior to the canine search of the passenger compartment does not mean that a canine search of a bus with passengers aboard is never appropriate. *See United States v. Garcia-Garcia*, 319 F.3d 726, 731 (5th Cir. 2003).

## CANINE SNIFF

As noted above, prior to the passengers exiting the bus, Agent Morales positioned himself and his dog near the front of the bus, approximately four to five feet from the passenger door of the bus. As the passengers, including defendant, exited the bus, they walked within four to five feet of the search dog. Defendant contends that the dog's non-contact sniff of him as he exited the bus

5

constitutes an unconstitutional search because Agent Morales had no individualized suspicion that Reyes was connected to criminal activity when he was forced to walk within smelling distance of the canine.

Activity constitutes a "search" if it infringes reasonable expectations of privacy. *Segura v. United States*, 468 U.S. 796, 820, 104 S.Ct. 3380, 3393, 82 L.Ed.2d 599 (1984). "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (internal quotations and citations omitted).

Whether a non-contact dog sniff constitutes a "search" is a question of first impression in this circuit. However, we are not completely without guidance. In *Horton v. Goose Creek Independent School District*, 690 F.2d 470 (5th Cir. 1982), the court analyzed whether a dog sniff involving contact with a person qualified as a search under the Fourth Amendment. After noting that "[i]ntentional close proximity sniffing of the person is offensive whether the sniffer be canine or human," the court held that "sniffing by dogs of the students' persons in the manner involved in this case is a search within the purview of the [F]ourth [A]mendment." *Id* at 479. The importance of the close proximity of the sniffing to the court's conclusion is demonstrated by the court's subsequent statement that "[w]e need not decide today whether the use of dogs to sniff people in some other manner, e.g., at some distance, is a search." *Id.* The Ninth Circuit has held that a non-contact dog sniff of students at school constitutes a search under the Fourth Amendment. *B.C. v. Plumas Unified School District*, 192 F.3d 1260, 1266 (9th Cir. 1999). For our purposes, it is significant that in reaching that conclusion, the Ninth Circuit agreed with the Fifth Circuit's statement in *Horton* that

6

"close proximity sniffing of a person is offensive whether the sniffer be canine or human." *Id.*

Both *Horton* and *Plumas* emphasize the "close proximity" of the sniff, an element not present in this case. Construing the evidence in the light most favorable to the government, as we are required to do, we accept the testimony of Agent Morales that defendant and his companion were approximately four to five feet away from the dog when they exited the bus and the dog alerted to an odor. Because the dog was not in close proximity to the defendant at the time he alerted, the dog's sniff was only minimally intrusive. Moreover, there is no evidence that Agent Morales intended to search the passengers exiting the bus or to have the dog sniff them. He testified that he intended "[t]o wait for everybody to get off . . . and then put the dog inside the bus." Considering that the sniff was unintentional and that the dog was approximately four to five away from the defendant at the time the sniff occurred, we conclude that the sniff does not constitute a search with the meaning of the Fourth Amendment.

STOP AND SEARCH

Law enforcement officers may briefly detain pedestrians in public "so long as the officers have reasonable suspicion to believe that criminal activity is afoot." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999). The facts giving rise to reasonable suspicion are judged against an objective standard. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Evaluating the legality of an investigatory stop involves a two-step inquiry: "1) whether the officer's action was justified at its inception; and 2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place." *United States v. Jones*, 234 F.3d 234, 240 (5th Cir. 2000). Here, a number of facts gave rise to a reasonable suspicion that defendant was involved in criminal activity. The dog alerted to defendant and his companion as they exited the bus,

and the dog pulled Agent Morales to follow the odor. When Agent Morales opened the door to the bus station in order to enter the station , the dog again began following defendant and his companion. When defendant and his companion separated, the dog again alerted to both of them and then alerted to defendant when he was alone. Other facts also support the conclusion that there was reasonable suspicion to detain defendant. The bus station was a mere two blocks away from the border with Mexico, and Brownsville has a reputation as a gateway for drug smuggling. Additionally, the dog did not alert to defendant's companion during the search of the bag to which the dog had alerted. The totality of the circumstances support a conclusion that there was reasonable suspicion to stop defendant and investigate him further.

A law enforcement officer may conduct a limited search of a subject for weapons if he reasonably believes that the suspect may be armed and dangerous. *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884. Absolute certainty that a suspect is armed is not required; "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883. Ample facts support the conclusion that it was reasonable for Agent Morales to believe that defendant might be armed and dangerous. Agent Morales testified that after stopping the defendant and his companion he knew that his dog was reacting to the scent of narcotics and that he was concerned about weapons because based on his experience and training he knew that "weapons accompany narcotics." Reyes and his companion were also wearing large jackets that could have concealed a weapon. In addition, the officer was outnumbered by the two suspects and was conducting the stop at a public bus station. Therefore, the officer had a reasonable belief that his safety and that of others was in danger.

The Fourth Circuit has noted that a law enforcement officer's interest in self-protection must

8

be balanced against the intrusion of the rights of the individual being searched in determining the reasonableness of a protective search. *United States v. Baker*, 78 F.3d 135, 137 (4th Cir. 1996). Agent Morales did not frisk defendant after he detained him; rather, he asked defendant to empty his pockets and raise his shirt. Defendant contends that Agent Morales exceeded the bounds of *Terry* by requesting that defendant empty his pockets and lift his shirt. The issue then is whether asking a suspect to empty his pockets and raise his shirt is more intrusive than the frisk permitted in *Terry* and therefore prohibited by the Fourth Amendment. "Terry does not in terms limit a weapons search to a so-called 'pat-down' search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault are [sic] permissible." *United States v. Hill*, 545 F.2d 1191, 1193 (9th Cir. 1976). Thus, the raising of a suspect's shirt by a law enforcement officer does not violate the boundaries established in *Terry*. *Id.* Neither does directing a suspect to lift his shirt to permit an inspection for weapons; a request that a suspect lift his shirt is "less intrusive than the patdown frisk sanctioned in *Terry*." *Baker*, 78 F.3d at 138. At no time during the inspection for weapons did Agent Morales touch the defendant. Non-consensual touching of another in most cases is clearly more intrusive of an individual's personal security than is a request to raise a shirt or to empty pockets. Agent Morales' request that defendant empty his pockets and lift his shirt was permissible under *Terry*.

We affirm the district court's denial of the defendant's motion to suppress.