## Commonwealth *vs.* Robert Flemming.

No. 09-P-261.

Suffolk. December 4, 2009. - April 23, 2010.

Present: Green, Rubin, & Wolohojian, JJ.

*Firearms. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Threshold police inquiry, Protective frisk. *Constitutional Law,* Search and seizure.

A Boston Municipal Court judge did not err in granting a criminal defendant's motion to suppress evidence seized as a result of a police officer's actions, incident to a stop, of lifting the defendant's shirt in order to ascertain the source of a bulge at the defendant's waistband, without first conducting a patfrisk, where, assuming that the police had reasonable suspicion of the defendant's involvement in criminal activity sufficient to justify the stop, based on a belief that the defendant had been involved in a reported incident of shots fired in a residential neighborhood, including a belief that he may have fired some of the shots, the circumstances of the police encounter with the defendant (who was cooperative, had made no threatening movements, and had his hands in the air) furnished no grounds to justify a departure from the usual and preferred method of beginning such a search with an exterior patfrisk. [634-638]

Complaint received and sworn to in the Central Division of the Boston Municipal Court Department on July 25, 2008.

A pretrial motion to suppress evidence was heard by *Raymond G. Dougan, Jr.,* J.

An application for leave to file an interlocutory appeal was allowed by *Francis X. Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Kris C. Foster,* Assistant District Attorney (*Greg Henning,* Assistant District Attorney, with her) for the Commonwealth.

*Andrea Petersen* for the defendant.

Green, J. Incident to a *Terry* stop,[1] and after observing a

---

[1] See *Terry* v. *Ohio,* 392 U.S. 1 (1968).

bulge at the defendant's waistband, the police lifted the defendant's shirt to ascertain the source of the bulge without first conducting a patfrisk. A judge of the Boston Municipal Court suppressed the evidence seized as a result of that search, and the Commonwealth appealed.[2] We conclude that, though there may be circumstances in which a patfrisk is unnecessary as an initial investigatory step, the present case does not warrant departure from the general rule favoring a patfrisk as a predicate to further investigation in a *Terry* stop. See, e.g., *Commonwealth* v. *Torres*, 433 Mass. 669, 675 n.6 (2001). We accordingly affirm the suppression order.

*Background.* We summarize the facts found by the motion judge.[3] On July 18, 2008, at about 5:17 P.M., Boston police Officers Taylor Small and Brandon Williams were on patrol in uniform in a marked police cruiser in the Dorchester section of Boston. They received a radio dispatch advising that shots had been fired in the area of 110 Draper Street. The mobile data terminal in their cruiser displayed information about the incident under the heading "pers gun," which they knew to refer to a person with a gun. The information in the mobile data terminal further advised that the person was being chased by four individuals. Officers Small and Williams responded (along with other officers) but found nothing related to the dispatch.

Officers Small and Williams recognized 110 Draper Street as the defendant's address; approximately two months earlier they had responded to a police dispatch regarding an incident at that address and were advised by the defendant's mother that a number of individuals had just fired gunshots at him.[4]

Later in the evening of July 18, Officers Small and Williams were assigned to follow a Boston Water and Sewer Commission truck and crew working in the Draper Street neighborhood to

---

[2]A single justice of the Supreme Judicial Court allowed the Commonwealth's motion for leave to pursue an interlocutory appeal. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).

[3]The Commonwealth does not challenge the judge's findings and has in any event not furnished a transcript to allow us to evaluate whether the evidence adduced at the suppression hearing supports them.

[4]Officers Small and Williams also had arrested the defendant in late March of the same year on various charges arising from a motor vehicle infraction (including resisting arrest).

prevent the crew from being harassed.[5] At 6:27 P.M., after the truck had turned onto Draper Street, Officer Williams (who was driving the cruiser) told Officer Small that they had just passed the defendant. Officer Williams pulled the cruiser alongside the defendant, rolled down the window, and called out to the defendant. The two officers then got out of the cruiser and approached the defendant, who had stopped. Officer Small asked the defendant about the incident earlier that evening, and about the previous incident on May 18. The defendant told Small that he was all right, and that he knew who had been involved in the incidents but did not want to be a snitch. The defendant explained that he was on his way to get a slice of pizza.

While Officer Small and the defendant were talking, Officer Williams approached the defendant's left side. From a distance of approximately four or five feet, Officer Williams noticed a bulge at waist height, beneath the defendant's T-shirt (which was hanging over his cargo shorts). The defendant told the officers that he wanted to leave to get his slice of pizza. Officer Williams told the defendant, "Before you go, I'm going to have to lift your T-shirt." Officer Williams told the defendant to put his hands in the air and then lifted the left side of the defendant's T-shirt, revealing a large, loaded revolver tucked into the defendant's waistband. The defendant was then placed under arrest.[6]

*Discussion.* "In 'stop and frisk' cases our inquiry is two-fold: first, whether the initiation of the investigation by the police was permissible in the circumstances, and, second, whether the scope of the search was justified by the circumstances." *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974). "Both of these inquiries relate to the reasonableness of the police officer's conduct under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Mas-

---

[5]Though the motion judge made no express finding that the neighborhood was a high crime area, the nature of the officers' assignment bespeaks at least some degree of volatility.

[6]The defendant was charged with carrying a firearm without a license, under G. L. c. 269, § 10(*a*), possession of a firearm and/or ammunition without a firearm identification card, under G. L. c. 269, § 10(*h*), and possession of a loaded firearm, under G. L. c. 269, § 10(*n*).

sachusetts Constitution. Stated otherwise, we consider whether the intrusiveness of the government's conduct is proportional to the degree of suspicion that prompted it." (Internal citations omitted.) *Commonwealth* v. *Torres*, 433 Mass. at 672. "Because there is no bright-line rule when determining reasonableness or proportionality, we must balance the need to make the stop and conduct the search against the intrusion on the defendant." *Ibid.*

We assume, without deciding, that the police had reasonable suspicion of the defendant's involvement in criminal activity sufficient to justify the stop, based on a belief that he had been involved in the reported incident of shots fired in a residential neighborhood, including a belief that he may have fired some of the shots.[7] We focus our inquiry on the permissible scope of the resulting search.

In assessing whether the scope of a search incident to a *Terry* stop is reasonable, we assess the search in relation to the circumstances which rendered its initiation permissible. *Commonwealth* v. *Silva, supra* at 407. In the present case, as in *Silva*, the purpose of the search was to ascertain whether the defendant was armed and dangerous. The permissible scope of such a search "is thus confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered. The issue as to what are the permissible limits has to be decided on the facts of each case. In most instances the search must be confined to a pat-down of the outer clothing of the suspect. Only after the pat-down gives indication that a weapon is present do the police have the privilege to search further." *Id.* at 408. That said, however, "*Terry* does not in terms limit a weapons search to a so-called 'pat down' search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault [is] permissible." *United States* v. *Hill,*

---

[7]Other factors supporting the reasonableness of the stop include the following. The officers had received a report of shots fired in the area of an address they recognized as the defendant's; they had information that the person with the gun was chased by four other individuals; the defendant's mother had informed the officers of another incident in the recent past in which the defendant was fired upon by a number of others; and the defendant himself corroborated the essential elements of the incidents when he acknowledged his awareness of the incidents and stated that he knew who was involved but did not want to be a snitch. We need not decide whether reasonable suspicion existed, however, because our resolution of the case does not turn upon this issue.

545 F.2d 1191, 1193 (9th Cir. 1976). Accord *United States* v. *Baker*, 78 F.3d 135, 138 (4th Cir. 1996). But see *United States* v. *Casado*, 303 F.3d 440, 448-449 & n.5 (2d Cir. 2002).[8,9]

Courts that have upheld searches of areas within or beneath a defendant's clothing without requiring a preliminary pat-down of the exterior generally have justified such a course on one of several grounds. In some cases, the police had particularized information that suggested presence of a weapon in the location searched. See, e.g, *United States* v. *Hill, supra* (suspect in bank robbery lifted shirt to display to teller gun tucked in waistband of pants; defendant apprehended within a short time after robbery, within 500 feet of bank). See also *People* v. *Taggart*, 20 N.Y.2d 335, 342-343 (1967), appeal dismissed, 392 U.S. 667 (1968) (police had tip that suspect had gun in left jacket pocket; reasonable for officer to reach into that pocket without first patting exterior). In others, courts have dispensed with the requirement of an exterior pat-down when the circumstances of the encounter suggested that requiring such a predicate step would have made the situation more dangerous, such as where a defendant's actions suggest that he may be reaching for a weapon. See, e.g., *People* v. *Superior Court*, 15 Cal. App. 3d 806, 809-810 (1975) (when responding to report of shots fired, permissible to reach directly into defendant's pocket after seeing defendant do so upon approach of police). Cf. *Commonwealth* v. *Jones*, 6 Mass. App. Ct. 942, 942 (1978). Similarly, the Supreme Judicial

---

[8]In both *Hill* and *Baker*, the United States Courts of Appeals for the Ninth and Fourth Circuits upheld searches in which a police officer lifted a defendant's shirt to reveal the source of a bulge the officer suspected to be a weapon. In *Casado*, the United States Court of Appeals for the Second Circuit reversed a conviction based on evidence seized in the same manner, based on its conclusion that the circumstances of the search posed no impediment to a pat-frisk as a minimally intrusive precedent to visual inspection beneath the defendant's clothing.

[9]Though the Supreme Judicial Court has held that art. 14 of the Declaration of Rights affords broader protection than the Fourth Amendment in certain respects arising from *Terry* stops, see *Commonwealth* v. *Stoute*, 422 Mass. 782, 786-788 (1996), and *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 668 (1999), it has not held that art. 14 imposes greater limitations on the scope or manner in which a *Terry* search may be conducted. In any event, the defendant in the present case has not argued that his rights are broader under art. 14 than under the Fourth Amendment. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 n.3 (1991).

Court has held that it is unnecessary to conduct a patfrisk of the exterior of a container believed to contain one or more weapons, in circumstances where such a patfrisk would not yield further useful information bearing on whether objects inside the container are in fact weapons. See *Commonwealth* v. *Pagan*, 440 Mass. 62, 72 (2003). See generally 4 LaFave, Search and Seizure § 9.6(b) (4th ed. 2004); Clancy, Protective Searches, Pat-downs, or Frisks?: The Scope of the Permissible Intrusion to Ascertain if a Detained Person is Armed, 82 Marq. L. Rev. 491 (1998-1999).

We have observed that an exterior pat-down nonetheless ordinarily is required, as a less intrusive alternative, before further investigation of concealed areas is permitted. See *Commonwealth* v. *Torres*, 433 Mass. at 675 n.6, citing *Commonwealth* v. *Silva*, 366 Mass. at 408.[10] That does not mean, however, that an officer engaged in a *Terry* stop and frisk must evaluate the least available alternative before acting. We are mindful that a report of an armed man warrants serious police attention, see *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 n.4 (1991), and that hindsight consideration of the reasonableness of actions of police officers in the field must extend deference to the danger such encounters pose, since "the answer might be a bullet." *Commonwealth* v. *Silva*, *supra* at 407, quoting from *Terry* v. *Ohio*, 392 U.S. 1, 33 (1968) (Harlan, J., concurring). In assessing the reasonableness of the method Officer Williams used in the present case to determine whether the bulge he observed was a weapon

---

[10]In requiring a patfrisk as a predicate to further investigation of concealed areas, the cases implicitly treat such a frisk as less intrusive than a visual inspection beneath a suspect's shirt. We recognize that reasonable minds may differ concerning the relative intrusiveness in some circumstances of the two methods. See, e.g., *United States* v. *Baker*, 78 F.3d at 138, observing that the *Terry* Court described a patfrisk as a "serious intrusion upon the sanctity of the person," requiring the officer to "feel with sensitive fingers every portion of the prisoner's body." *Terry* v. *Ohio*, *supra* at 17 & n.13. We note, however, that a visual inspection of otherwise concealed areas is more intrusive than a patfrisk in at least two respects relevant to Fourth Amendment and art. 14 analysis. First, it may reveal objects (such as soft or pliable items) that would not warrant further investigation, were they felt during a patfrisk. Cf. *Commonwealth* v. *Wilson*, 441 Mass. 390, 396-397 (2004) (adopting "plain feel" doctrine of *Minnesota* v. *Dickerson*, 508 U.S. 366 [1993]). In addition, it may reveal parts of the body that are customarily not displayed in public. Moreover, in contrast to a tactile inspection conducted solely by the investigating officer, it reveals the area uncovered to a broader audience, consisting of anyone within viewing range of the encounter.

or some other object, then, " '[t]he question is not simply whether some other alternative [to lifting the defendant's shirt] was available . . . but whether he acted unreasonably in failing to recognize or to pursue it.' To determine whether the search was reasonable, we therefore must consider whether obvious, commonly employed, and effective alternatives were available under the circumstances." *United States* v. *Casado*, 303 F.3d at 448, quoting from *United States* v. *Sharpe*, 470 U.S. 675, 687 (1985).

In the present case, there was no reason why Officer Williams could not conduct a pat-down of the exterior of the defendant's clothing in the location of the suspicious bulge, to determine whether the object felt like a weapon. The defendant was cooperative, had made no threatening movements toward the police (who had no particularized information placing a gun or other weapon in the defendant's waistband), and had his hands in the air. We accordingly conclude that the circumstances of the encounter between Officer Williams and the defendant furnished no grounds to justify a departure from the usual and preferred method of beginning a *Terry* search with an exterior patfrisk.

> *Order allowing motion to suppress affirmed.*