# CIRCUIT COURT OF AUGUSTA COUNTY

Commonwealth of Virginia

    v.

Nicholas Scott Wichael

December 20, 2011

Case No. CR11000147-00

By Judge Victor V. Ludwig

    I am writing to inform the parties of the Court's decision concerning Mr. Wichael's motion to suppress evidence, argued on November 23, 2011. For the reasons recited in this letter, I grant the motion.

*Facts*

    On September 3, 2011, Corporal Michael Roane heard a radio call from Lieutenant James Mader, who had stopped a red sport utility vehicle on Augusta Farms Road in Augusta County, Virginia, for failing to use a turn signal. Lt. Mader gave the location of the stop and the license plate of the vehicle. Cpl. Roane thought he recognized the license plate, so he ran the tag on the computer, confirming his suspicion about the vehicle and its owner. Cpl. Roane had previously received information regarding a connection between the vehicle's owner and the sale of narcotics, specifically marijuana and pills. Because of this knowledge, he responded to the scene to assist Lt. Mader in the stop, arriving a few minutes after hearing the call.

When Cpl. Roane arrived at the scene, he saw Lt. Mader in his car writing the traffic ticket. After talking to Lt. Mader for a moment, Cpl. Roane approached the vehicle from the passenger's side and made contact with Wichael, who was seated in the front passenger seat. During this time, both Wichael and the vehicle's driver, Mr. Brooks, appeared very nervous. When Cpl. Roane asked Wichael to step out of the car, Wichael became even more nervous and began to shake. Based on past experience, Cpl. Roane felt that Wichael's behavior appeared to be that of a suspect preparing to run. Because of this behavior, Cpl. Roane asked him if he "had anything on him" and Wichael responded in the negative. Then Cpl. Roane asked Wichael if he would empty his pockets, which he did, all the while moving and shuffling around.

After Wichael had exited the vehicle, Cpl. Roane noticed a large bulge in Wichael's crotch area, which he thought might be a weapon. As Cpl. Roane performed the pat-down, he simultaneously lifted up Wichael's shirt and saw that the bulge was a bag within a bag, containing a substantial amount of what appeared to be (and, in fact, was) marijuana. He pulled the bag from Wichael's pants and estimated that it contained approximately a half pound of marijuana. Cpl. Roane arrested Wichael, handcuffed him, and read him his *Miranda* rights. Wichael waived his *Miranda* rights and told Cpl. Roane that he found the baggie in the woods and placed it in his pants. That was the extent of the conversation, however, as Wichael refused to cooperate further. Cpl. Roane then notified Lt. Mader about the drugs and arrested the vehicle's driver and read him his *Miranda* rights as well. The vehicle was towed and, during a search incident to the impoundment of the car, the deputies found another half pound of marijuana.

### Analysis

On a motion to suppress, the Commonwealth has the burden to prove, by a preponderance of the evidence, that the evidence seized is admissible. *Colorado v. Connelley*, 479 U.S. 157 (1986). The Commonwealth's burden, however, requires that it address only the deficiencies of the search which the defendant argues. *See Vaughn v. Commonwealth*, 279 Va. 20 (2010). In the pending case, Wichael's motion only addressed whether Cpl. Roane had reasonable, articulable suspicion to stop the vehicle in which Wichael was a passenger and to engage in a stop and frisk pursuant to the restrictions of *Terry v. Ohio*, 392 U.S. 1 (1968). (Def. Mot. ¶ 8.) Normally this Court would decide only the limited issue presented because "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling." Rule 5A:18 (*See also* Rule 5:25.) However, in its memorandum in opposition, the Commonwealth additionally addressed the scope of the *Terry* frisk and inevitable discovery through the plain feel doctrine. (Com. Mot. ¶ ID-II.)

Moreover, at the hearing on November 23, the parties agreed that the issues of the scope of the search and inevitable discovery were also properly before the Court, so I will address those issues as well.

## Reasonable Suspicion

Wichael argues that Cpl. Roane lacked the necessary reasonable suspicion to stop Wichael and Brooks for any longer than was reasonably necessary to write a traffic ticket and that he did not have reasonable suspicion to frisk Wichael. (Def. Mot. ¶ 8.) Wichael correctly states that, normally, a "police officer must be able to point to specific and articulable facts" showing that "criminal activity may be afoot" and that the suspect "may be armed and presently dangerous" in order properly to detain a suspect under *Terry*. (Def. Mot. ¶ 7, quoting *McCain v. Commonwealth*, 275 Va. 546 (2008).) However, as applied to vehicle stops, the analysis becomes more complicated.

The officer first must have reasonable suspicion to stop the car. There does not seem to be any real disagreement between the parties as to whether Lt. Mader had cause to stop Brooks' car initially. It is well-settled that "an officer may effect a traffic stop when he has reasonable suspicion to believe a traffic or equipment violation has occurred." *McCain*, at 553 (referring to the holding in *Bass v. Commonwealth*, 259 Va. 470, 475 (2000)). It is uncontested that Lt. Mader stopped the vehicle as part of a routine traffic stop.

The Supreme Court has stated that, once a vehicle has been lawfully stopped, due to the inherent danger of a traffic stop, "an officer may take certain steps to protect himself, such as asking the driver and any passengers to exit the vehicle." *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997). Virginia's Court of Appeals has also stated that a police officer may "order the passengers to get out of the car pending the completion of the stop." *Hamlin v. Commonwealth*, 33 Va. App. 494, 500 (2000). Hence, without more, Cpl. Roane acted within his authority when he asked Wichael to step out of the car while they talked.

Given that a vehicle has been legally stopped and the occupants legally detained solely as a result of a traffic stop and ordered to exit the vehicle, in order to conduct a pat-down search "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 323 (2009). If, however, *during* the traffic stop, the officer develops reasonable suspicion to believe the person is armed and dangerous, he may conduct a *Terry* frisk. *Knowles v. Iowa*, 525 U.S. 113 (1998); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). According to the Virginia Supreme Court, circumstances relevant to the development of reasonable suspicion may include "the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique

perspective of a police officer trained and experienced in the detection of crime," among other things. *See Williams v. Commonwealth,* 4 Va. App. 53, 67 (1987). Cpl. Roane testified that Wichael became very nervous once he stepped out of the car. He started to look around and shake. (Roane Tr. 7:1-4.) Based on Cpl. Roane's experience, it appeared to him as though Wichael was planning to run, and his behavior made Cpl. Roane nervous and gave him reason to wonder if Wichael might have a weapon that could be used against him. This behavior, viewed in light of Cpl. Roane's training and experience, would give rise to a reasonable suspicion that Wichael may be armed.

Cpl. Roane also had the additional information that the vehicle at issue was known to be involved in trafficking narcotics. As the Commonwealth noted in its memorandum, Virginia courts have found that suspicion of narcotics distribution gives rise to an inference of dangerousness. (Com. Mot. ¶ IC, *citing Harmon v. Commonwealth,* 15 Va. App. 440, 445 (1992).) Although the information that Brooks was involved in the distribution of narcotics would not, in itself, justify a reasonable suspicion as to Wichael, it was a component, however minimal, that, when combined with Wichael's evasive behavior and Cpl. Roane's training and experience, created reasonable suspicion sufficient to justify a simple *Terry* search of Wichael.

### Scope of the Terry Stop and Frisk

Even though the stop and frisk for weapons in the instant case was permissible under *Terry,* lifting up Wichael's shirt and looking inside his clothing during the pat-down exceeded the acceptable scope of the frisk. According to *Terry,* an officer may pat-down the *outside* of a suspect's clothing in search of weapons. However, the officer may not look under a suspect's clothing until he feels an object that he reasonably believes is a weapon. *Terry* at 30-31 (1968) (emphasis added). In *Terry,* for example, the Court found that the officer acted within the scope of his constitutional authority when he did not place his hands in the suspect's pockets or under the suspect's garments until after he felt weapons. *Id.* at 29-30. Compare that to *Sibron, Terry*'s companion case, where the Court found that the officer exceeded the scope of the frisk when he pulled an object out of the suspect's pocket before a pat-down. *Sibron v. New York,* 392 U.S. 40, 65 (1968). The Court distinguished *Sibron* and *Terry,* stating that the *Terry* search "consisted solely of a limited patting of the outer clothing of the suspect. . . . Only when he discovered such objects did the officer in *Terry* [reach into the pocket]." *Id.* at 66.

The Court has since extended the weapons frisk to include immediately recognizable contraband. *Minnesota v. Dickerson,* 508 U.S. 366 (1993). However, the contraband still must be found by "a police officer [who] lawfully pats down a suspect's outer clothing." *Id.* at 375.

The Commonwealth argues that raising a defendant's shirt is an appropriate technique for a weapons search under *Terry*. (Com. Mot. ¶ ID.) In support of this contention, the Commonwealth cites solely to federal opinions, two from the Fourth Circuit, one from the Fifth Circuit, and one from the Ninth Circuit. These opinions are at best only persuasive authority for this Court, and only those found in the Fourth Circuit are even relevant to the current situation.

In *United States v. Reyes*, 349 F.3d 219 (5th Cir. 2003), the officer was confronted with a person on whom a drug dog had strongly alerted, who was at a bus station two blocks away from a gateway for smuggling drugs, and who was wearing a large jacket in which a weapon could be concealed. In addition, the officer was outnumbered by the defendants whom he encountered. In the case before this Court, there were two police officers, two occupants of the vehicle, and Cpl. Roane's suspicion of Wichael's involvement in drug activity was much less compelling.

To be sure, in *Reyes*, the Court broadly stated that "the raising of a suspect's shirt by a law enforcement officer does not violate the boundaries established in *Terry*," *id*. at 225, but the statement is either dictum or without persuasive authority. First, the issue for decision in *Reyes*, as articulated by the Court was "whether asking a suspect to empty his pockets and raise his shirt is more intrusive than the frisk permitted in *Terry* and therefore prohibited by the *Fourth Amendment*." *Id*. The Court's observation about an officer's raising the defendant's shirt was clearly not necessary to its response to the question presented. Moreover, the Court relied on *United States v. Hill*, 545 F.2d 1191 (9th Cir. 1976), as its authority, a holding which is simply wrong on its basic premise, which is the permissible scope of a *Terry* search. In that case, the defendant had previously lifted his shirt to show the bank teller the gun in his waistband, so the police *knew* that someone (although not necessarily the defendant) had a weapon and exactly where it was located. The holding in that case is consistent with the only Supreme Court case in which the Court expressly approved an expansion of a *Terry*-type search involving an officer reaching directly for a weapon in a suspected location on the defendant's person, with no preceding pat-down. *Adams v. Williams*, 407 U.S. 143 (1973). In *Adams*, like *Hill*, the officer was acting on information from a person on the scene who directed the officer's attention to the imminent and known threat.

Even if this Court were to find the Fourth Circuit's reasoning persuasive, the facts in *United States v. Baker*, 78 F.3d 135 (4th Cir. 1998), and in *United States v. Edmonds*, 149 F.3d 1171 (4th Cir. 1998), are distinguishable from the present case. In *Baker*, an officer conducted a simultaneous traffic stop of two separate vehicles at 1:20 a.m. The officer was alone and outnumbered by the suspects. These facts alone arguably could give rise to the sort of precarious situation that theoretically could allow an officer to exceed the limitations provided in *Terry*. *Terry* at 29 (the reasonableness

of a protective search depends on the factual circumstances of each case); *see also Michigan v. Long*, 463 U.S. 1049 (1983) (providing that a *Terry* stop may include a limited frisk of the area within the suspect's immediate control if circumstances call for it). An additional significant fact, however, is that the defendant in *Baker* was directed to raise his own shirt; the officer did not raise it for him. *Baker* at 138. The Fourth Circuit noted that the search was less intrusive than an actual pat-down, because in that case the officer *did not even touch* the defendant. *Id*. In the present case, the stop occurred in the middle of the afternoon, Cpl. Roane was not alone, nor were the deputies outnumbered by suspects. His need to protect himself in the situation, while legitimate, did not rise to a level that would justify exceeding the limitations imposed by *Terry*. Additionally, and perhaps more significantly, Cpl. Roane lifted up Wichael's shirt, rather than asking (or even ordering) Wichael to lift it himself. This action, especially considering that it occurred simultaneously with a pat-down, increased rather than decreased the intrusiveness of the search.

The Fourth Circuit's unpublished opinion in *United States v. Edmonds* is distinguishable as well. As in *Baker*, the officer was alone and outnumbered at a late hour. In his case, he was not conducting a routine traffic stop, but rather was approaching two suspects who were in the process of stealing a car. The officer, attempting to determine if the defendant was carrying any weapons while still keeping eyes on the other suspect, asked the defendant to pull up his shirt. *Id*. It was only when the suspect had refused multiple times and had begun acting very anxious and shaky that the officer lifted up the defendant's shirt with the barrel of his gun. *Id*. Due to the particular circumstances of the stop, the officer safety concern in *Edmonds* was significantly higher than in the present case. And, as with *Baker*, one might argue that the intrusion was lessened because the officer did not physically touch the defendant, although the fact that the instrument which the officer used was the barrel of a gun shifts the focus from mere intrusion to a much more intimidating encounter.

The Commonwealth has not cited, and this Court has not found, any binding authority in Virginia which supports the Fourth Circuit's opinions in *Baker* or *Edmonds*. In fact, Virginia cases dealing with *Terry* stops which were decided after those opinions continue to approve of the limitations established by the Supreme Court. *See Muse v. Commonwealth*, 2004 WL 1379841 (Va. App. 2004) (unpublished opinion) (adding emphasis to its quote from *Terry* that an officer can conduct a "carefully limited search of the *outer clothing*").

From Cpl. Roane's testimony, it is ambiguous whether he lifted Wichael's shirt before or during the pat-down, but either sequence of events would be improper. Having reviewed the transcript, the Court is somewhat at sea as to how, merely by lifting Wichael's shirt, Cpl. Roane could have seen what the bulge in his groin area was unless Wichael's pants fell down

simultaneously with the lifting of the search. Nevertheless, the testimony was that Cpl. Roane noticed the "large bulge in his crotch area" and that he "lifted his shirt and [he] could see a bag within a bag. . . ." (Roane Tr. 7:7-10.) The appropriate progression under *Terry* consists of conducting a pat-down, feeling an object that might be a weapon or is immediately recognizable as contraband, then lifting the suspect's shirt and retrieving the object. Any other sequence would require probable cause to believe the suspect is carrying a weapon or contraband, or, at a minimum, much more dangerous circumstances than in the present case.

As a side note, in his motion (filed prior to the hearing), Wichael recited that Cpl. Roane performed a pat-down, felt the object, and then lifted Wichael's shirt and retrieved the marijuana. (Def. Mot. ¶ 6.) This does seem to be an admission that Cpl. Roane followed the proper progression of events, but it still does not decide the issue. Moreover, that assertion was made prior to the evidentiary hearing on November 23.

### Plain Feel Doctrine and Inevitable Discovery

Even if Cpl. Roan had followed the proper progression of events, the evidence still would have been improperly collected. The Commonwealth argues that, even if the frisk exceeded the scope of *Terry*, the evidence is admissible under the doctrine of inevitable discovery. (Com. Mot. ¶ II.) However, this argument rests on an improper reading of the Virginia Supreme Court's interpretation of the plain feel doctrine.

Under the plain feel doctrine as first discussed in *Dickerson*, the character of the object felt must be "immediately apparent either as a weapon or as some form of contraband." *Cost v. Commonwealth*, 275 Va. 246, 252 (2008). In *Cost*, the Virginia Supreme Court suppressed caplets found during a search of the defendant, because the officer's testimony that he felt caplets and believed that they were heroin was not sufficient to satisfy the "immediately apparent" requirement. As Justice Koontz noted, the caplets could have been completely legal medications, such as Motrin. *Id.* at 253. Because there could be some doubt as to whether the caplets were legal substances or not, it was not immediately apparent as contraband. *Id.* at 254. In a case factually closer to the present circumstances, the Virginia Supreme Court suppressed a baggie of marijuana found when an officer felt a soft substance in a plastic baggie during a pat-down. *Murphy v. Commonwealth*, 264 Va. 568 (2008). Despite his training and belief that the soft substance in the baggie was marijuana, the officer was not sure that the substance was marijuana until he pulled the baggie out of the defendant's pocket. *Id.* at 574-75. Holding that the evidence should have been suppressed, Justice Keenan wrote that, "when the character of the item is not immediately apparent from the pat-down search and the officer does

not reasonably suspect the item is a weapon, further search regarding the item is not allowed." *Id.* at 574.

Whatever Cpl. Roane may have felt, his testimony merely discloses that he saw a bulge and assumed it was a weapon. (Roane Tr. 7:7-9.) Because Cpl. Roane lifted Wichael's shirt at the same time as the pat-down, it is impossible to tell whether he felt the marijuana or saw it first. Therefore, the only plain feel information present is the existence of a bulge in Wichael's waistband. Had Cpl. Roane patted down Wichael before lifting up his shirt, the bulge would have been soft and therefore not clearly a weapon. However, a soft bulge in a defendant's waistband is not enough information to justify a conclusion that the item was immediately apparent as contraband.

The Commonwealth attempts to distinguish the search in *Murphy* from the search at issue here by stating that the *Murphy* case dealt with contraband in a suspect's pocket, rather than in his waistband. (Com. Mot. ¶ II.) This is a distinction without a difference. Based on his training and experience, Cpl. Roane may well have suspected the soft bulge to be contraband. That is not enough. In the *Cost* case, the officer based his belief that the caplets were heroin on his training and experience in drug interdiction. There, the Virginia Supreme Court explained that the plain feel doctrine has not been satisfied when the "officer has no more than an educated 'hunch' based upon the 'plain feel' that the object might be contraband." *Cost*, 275 Va. at 252. The Court in *Cost*, as well as in *Murphy*, found that the officer's perception of contraband must come as a result of the officer's "tactile perception." *Cauls v. Commonwealth*, 55 Va. App. 90, 103 (2009) (*quoting Murphy*, 264 Va. at 574-75).

At this juncture, the Court is without any evidence that Cpl. Roane felt a bulge and knew, rather than merely suspected, that it was contraband. Because Cpl. Roane did not feel the bulge before lifting up Wichael's shirt and observing the marijuana, this Court is unprepared to state that the soft bulge in Wichael's waistband was "immediately apparent" as "evidence of a crime." *Baker v. Commonwealth*, 57 Va. App. 181, 194 (2010). If Cpl. Roane had felt the bulge first, perhaps there would be a more complete account of what he felt during the pat-down. As the evidence was presented at the suppression hearing, however, this Court cannot find that Cpl. Roane would have inevitably discovered the marijuana during a legitimate pat-down.

## Conclusion

Because of the foregoing analysis, this Court finds that Lt. Mader had a reasonable basis to stop Wichael and Brooks and that Cpl. Roane had reasonable suspicion to perform a *Terry* frisk on Wichael. However, Cpl. Roane exceeded the scope of the *Terry* frisk when he lifted Wichael's shirt during the pat-down, and there is insufficient evidence on the record to find

that the marijuana would have inevitably been discovered by plain feel. Therefore, the Court grants Wichael's motion to suppress the evidence.