# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00810-COA

ANTONIO MAURICE PARKS A/K/A ANTONIO PARKS      APPELLANT

v.

STATE OF MISSISSIPPI      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/14/2013 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROSALIND HAYDEN JORDAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF MORE THAN THIRTY GRAMS OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE, AND SENTENCED TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WHICH IS TO RUN CONSECUTIVELY TO ANY PREVIOUSLY-IMPOSED SENTENCE, WITH TEN YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, AND A FINE OF $5,000 |
| DISPOSITION: | AFFIRMED - 01/20/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Antonio Maurice Parks was convicted of possession of a schedule II controlled

substance and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended and fifteen years to serve, followed by five years of post-release supervision. Parks claims on appeal that the circuit court's admission of evidence obtained during an investigatory stop was an abuse of discretion, as the stop and subsequent search of his person violated his rights under the Fourth Amendment. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On the evening of August 3, 2012, Mississippi Bureau of Narcotics Agent Clint Walker received information from a confidential informant that two African American males, traveling from Winston County, Mississippi, in a green SUV with a Holmes County license plate, were transporting approximately two ounces of crack cocaine. Approximately two hours later, Agent Walker spotted two African American males in a green SUV with a Holmes County license plate traveling through Ackerman, Mississippi. Following the vehicle in an unmarked car, Agent Walker observed the vehicle cross the center line of the road "a couple of times." Concerned about the potential for a high-speed pursuit, Agent Walker radioed the Attala County Sheriff's Department, requesting assistance in making a traffic stop. Law enforcement set up a fake safety checkpoint on Highway 12 in order to effectuate the traffic stop. As the green SUV stopped at the checkpoint, four sheriff's deputies and Agent Walker approached the car, with guns drawn.

¶3. Parks was the driver of the vehicle. He and his passenger, Curtis Blackmon, were ordered from the vehicle and placed in handcuffs. Parks was taken to the rear of the vehicle, accompanied by Sheriff Tim Nail and, according to Parks, was given a *Terry* pat-down

2

search at that time.[1] Blackmon was taken to the front of the car and left in the custody of a deputy. Agent Walker did a quick search of the car to check for any weapons in plain sight. He then proceeded to search Blackmon, but he found nothing on Blackmon's person. After obtaining Parks's verbal consent, Agent Walker searched the vehicle a second time, but found no contraband. Then, Agent Walker went to the rear of the vehicle where Parks was being held. He lifted Parks's shirt to check for any concealed weapon or contraband and saw three to four inches of the top of a sealed plastic bag sticking up from the waistband of Parks's pants. Sheriff Nail removed the white opaque bag, which contained an off-white, hard, rock-like substance. It was later determined that the bag contained approximately forty grams of crack cocaine.

¶4.    Parks was subsequently convicted of possession of thirty grams or more of cocaine, a schedule II controlled substance. He was sentenced to twenty-five years in the custody of the MDOC, which was to run consecutively to any previously imposed sentence, with ten years suspended and fifteen years to serve, followed five years of post-release supervision, and a $5,000 fine. On March 27, 2013, Parks filed a motion for a new trial, or alternatively, for a judgment notwithstanding the verdict, arguing that the circuit court erred in denying his motion to suppress the cocaine evidence, as it was obtained in violation of his rights under the Fourth Amendment. He also claimed the verdict was against the overwhelming weight of the evidence.

¶5.    The circuit court denied Parks's post-trial motion, and he now appeals, re-asserting

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1921).

his claim that the search and seizure violated his Fourth Amendment rights.[2]  Finding no error, we affirm.

## DISCUSSION

**Whether the *Terry* pat-down conducted by Agent Walker violated Parks's Fourth Amendment right against an unlawful search and seizure.[3]**

¶6.     At trial, defense counsel moved to suppress the evidence of the cocaine, claiming that Parks had already been frisked for a weapon when he was initially handcuffed; thus, the second *Terry* search of Parks by Agent Walker was a violation of Parks's Fourth Amendment rights.  He further contended that when Agent Walker lifted up Parks's shirt, it exceeded the boundaries of a *Terry* search, which he claims only permits the patting down of a suspect's

---

[2] On appeal, Parks has abandoned his claim that the verdict was against the overwhelming weight of the evidence.

[3] Although neither party addressed the validity of the traffic stop on appeal, we find the investigatory stop of Parks and his companion did not constitute an unlawful search and seizure.  As the trial court ruled, "there was probable cause to make an investigative stop based on the information that was received from the confidential informant."  Evidence for reasonable suspicion to make an investigatory stop generally comes from two sources: "either the officers' 'personal observation' or an informant's tip." *Eaddy v. State*, 63 So. 3d 1209, 1213 (¶15) (Miss. 2011) (citing *Williamson v. State,* 876 So. 2d 353, 355 (¶9) (Miss. 2004)).  "[A]n informant's tip may provide reasonable suspicion if accompanied by some indication of reliability[.]" *Id*.

Agent Walker confirmed he had used the confidential informant on four prior occasions and that the information provided to him by the informant in the past had been "true and accurate."  Also, law enforcement's identification of the vehicle matched what the informant had told them.  Because law enforcement's reasonable suspicion was supported by an indication of reliability (the informant's tip, corroborated by law enforcement's independent investigation), the investigatory stop of the vehicle was supported by probable cause and not an unlawful search and seizure. *See Floyd v. City of Crystal Springs*, 749 So. 2d 110, 119 (¶33) (Miss. 1999) (holding investigatory stop was justified as reliable named informant provided law enforcement specific information concerning defendant's vehicle and the informant's details were corroborated by law enforcement).

*outer clothing* to check for weapons. *See Terry v. Ohio*, 392 U.S. 1, 29-30 (1921). Therefore, he argued that the cocaine evidence was "fruit of the poisonous tree."

¶7. There was no indication by the informant that either of the suspects possessed a weapon. Parks gave consent to search vehicle, but nothing was found in the *Terry* search of the vehicle. However, "[a]bsolute certainty that a suspect is armed is not required; 'the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Reyes*, 349 F.3d 219, 224 (5th Cir. 2003) (quoting *Terry*, 392 U.S. at 27). Agent Walker stated that in his experience and training, suspects who possess that amount of "dope" generally are carrying a weapon, which is why both suspects were handcuffed. At the motion hearing, the trial judge asked Agent Walker to give additional testimony as to why he still had concern for officer safety when Parks was already handcuffed. Agent Walker testified that weapons and contraband can often be concealed in a person's waistband, and he further explained:

> Being handcuffed in the rear [of the vehicle] would still give [Parks] access to any weapon in the waistband. So to be able to clearly – for my comfort, for my safety, I pick[ed] up his shirt enough to where I could visibly see and also pat[ted] around the waistband to where he would have access to a weapon.
>
> . . . .
>
> This is my officer safety. There is me being able to say I'm doing everything I can do to go home to my family at night. When I approached him, I asked the sheriff has he been searched, patted down *and he was not able to say yes*. So at that point, I lifted his shirt. I pat[ted] down his waistband. No weapons that he can get his hands on to keep me from going home at night.

(Emphasis added). The trial judge concluded that "because Agent Walker had not been present when Defendant Parks was originally handcuffed, it was reasonable for him to

5

conduct a *Terry* pat[-]down to determine if the defendant had a weapon." He also held that the lifting of Parks's shirt "was a reasonable thing to do," as it was dark outside and weapons are often found tucked in a suspect's waistband.

¶8.    In *Estrada v. Rhode Island*, 594 F.3d 56, 67 (1st Cir. 2010), the United States Court of Appeals for the First Circuit concluded that a second pat-down of the suspect was justified because the officer had concerns for his safety, as he could not see the suspect while conducting a background check, and the situation "had escalated" because other suspects did not have legal documentation of citizen status. Here, when questioned at trial whether anyone had conducted an initial pat-down of Parks when he was being handcuffed, Sheriff Nail stated that it was the normal procedure to do so, but he also testified: "I don't remember. I don't remember myself doing one or seeing anybody do one." As the trial court noted in its order denying Parks's motion for a new trial, "[Agent] Walker was not able to secure a definitive answer from Sheriff Nail concerning the security and thoroughness of a search of Parks." Agent Walker stated that, in his experience as a law enforcement officer, a suspect can reach a weapon even though handcuffed. Consequently, we find no error in the circuit court's conclusion that the decision to conduct a *Terry* search by Agent Walker was reasonable under the totality of the circumstances.

¶9.    Regarding the lifting of Parks's shirt, the United States Court of Appeals for the Fifth Circuit stated in *Reyes* that "the raising of a suspect's shirt by a law enforcement officer does not violate the boundaries established in *Terry*." *Reyes*, 349 F.3d at 225 (citing *United States v. Hill*, 545 F.2d 1191, 1193 (9th Cir. 1976)). "[W]hile a search incident to a *Terry* stop ordinarily is confined to a pat-down of the outer clothing of a suspect, '*Terry* does not in

6

terms limit a weapons search to a so-called pat-down search.'" *State v. Taveras*, 39 A.3d 638, 649 (R.I. 2012) (quoting *Commonwealth v. Flemming,* 925 N.E.2d 39, 43 (Mass. Ct. App. 2010)). In *Hill*, 545 F.2d at 1193, the Ninth Circuit also held: "*Terry* does not in terms limit a weapons search to a so-called 'pat[-]down' search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault are permissible. The raising of the shirt in the instant case is well within the boundaries established by *Terry*."[4]

¶10. Agent Walker stated that Parks was wearing a "large shirt" that "was definitely not tight on his skin" and that, in his experience, a weapon is often concealed in the waistband of a suspect's pants. Parks confirmed during his hearing testimony, on the motion to suppress, that his t-shirt "covered [his] pants." Upon the lifting of the t-shirt, the contraband was sticking out approximately three to four inches above Parks's pants and was clearly visible to the officers. Agent Walker's slight lifting of the shirt to view Parks's waistband was a "limited intrusion" in this instance, and we find that his actions did not violate Parks's Fourth Amendment rights. Accordingly, the circuit court did not abuse its discretion in denying Parks's motion to suppress the evidence. *See Cooper v. State*, 93 So. 3d 898, 900 (¶6) (Miss. Ct. App. 2012) (A trial court's admission or exclusion of evidence is reviewed for abuse of discretion.).

¶11. **THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY OF CONVICTION OF POSSESSION OF MORE THAN THIRTY GRAMS OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE, AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WHICH IS TO RUN CONSECUTIVELY TO ANY**

---

[4] We acknowledge that in *Hill*, the officer observed a "bulge" in the waistband, providing suspicion that defendant had a weapon.

**PREVIOUSLY-IMPOSED SENTENCE, WITH TEN YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, AND A FINE OF $5,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**