# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DENNIS JASON WAYNE FISHER,<br><br>Appellant. | No. 48907-4-II<br><br>UNPUBLISHED OPINION |

MAXA, A.C.J. – Dennis Fisher appeals his conviction for possession of a controlled substance other than marijuana–heroin.  Fisher was arrested after law enforcement officer Julie Goode found heroin in his possession during a *Terry*[1] stop and frisk.  Fisher argues that he received ineffective assistance of counsel because his defense counsel failed to move to suppress the heroin, cash found in a search incident to arrest, and statements he made to Goode.  Fisher claims that the trial court would have suppressed the evidence because Goode violated his constitutional rights by (1) frisking him without a basis to believe that he was armed and dangerous; and (2) lifting his shirt and retrieving a plastic baggie containing the heroin from the coin pocket of his jeans, both actions that were outside the scope of a permissible *Terry* frisk.

We hold that the record is insufficient to determine whether Goode had reason to believe Fisher was armed and dangerous, whether Goode impermissibly lifted Fisher's shirt, and whether

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Goode was justified in seizing the baggie of heroin based on the plain view doctrine. Therefore, we decline to consider Fisher's ineffective assistance of counsel claims and we affirm Fisher's conviction.

FACTS

On October 13, 2015 at approximately 9:00 PM, Goode received a dispatch to a residence in Forks concerning a disturbance. The reporting party indicated that Fisher had kicked in a bedroom door and was leaving in a black vehicle. Goode located the vehicle, which she knew belonged to Fisher from previous contacts. Fisher was driving and there were two other occupants. Goode stopped the vehicle, had Fisher exit, detained him, and patted him down for weapons.

Goode briefly described her search of Fisher in a probable cause report and in her trial testimony. During her pat down, Goode lifted Fisher's shirt to better see the right front pocket of Fisher's jeans because it contained a big bulge. Goode did not clearly say in her report or at trial whether she patted the bulge before lifting the shirt. At trial, she stated that she lifted the shirt because "[a]s this is for weapons, I didn't want to poke myself on anything or if maybe there were knives or some unknown weapon." Report of Proceedings (RP) at 125.

In her probable cause statement, Goode stated, "I saw a 'dime' bag sticking out of the small inner pocket with a dark colored substance inside. I immediately seized the bag and based on my training and experience believed the substance to be heroin." Clerk's Papers (CP) at 97. At trial, Goode stated that there was a dime bag in Fisher's pocket that had a black tarry-like substance in it, and that she "immediately seized the baggie from his pocket" based on her suspicion that the item in the baggie was heroin. RP at 128. But her cross-examination

testimony suggested that she may not have seen the black substance until she removed the baggie from Fisher's pocket.

Goode read Fisher his Miranda rights as soon as she saw the baggie. She advised Fisher that he was under arrest for possession of a controlled substance. Goode then searched Fisher incident to the arrest and found over $7,000 in $50 and $100 bills in the right pocket.

The State charged Fisher with residential burglary and possession of a controlled substance other than marijuana–heroin. The State subsequently dismissed the burglary charge. Apparently because of the dismissal, the parties agreed before trial not to address the circumstances leading up to Goode's detention and search of Fisher. Fisher did not move to suppress evidence of the heroin or the cash.

At trial, Goode provided some testimony about the search and the trial court admitted evidence that the baggie Goode found contained heroin. The jury found Fisher guilty of possession of a controlled substance other than marijuana–heroin.

Fisher appeals his conviction.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Ineffective Assistance of Counsel

We review ineffective assistance of counsel claims de novo. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an

objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id.* at 34.

When arguing ineffective assistance for failure to seek suppression of evidence, the defendant must show from the record that a motion to suppress likely would have been granted. *State v. Walters*, 162 Wn. App. 74, 81, 255 P.3d 835 (2011). However, an ineffective assistance claim will fail when the parties did not have an opportunity to make their respective records and therefore the record lacks a factual basis for determining the merits of a suppression motion. *Id.* In that situation, we decline to consider the issue. *Id.*

If a defendant needs to rely on evidence outside the record to support an ineffective assistance of counsel claim, the appropriate means to obtain review is to file a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

2. *Terry* Stop and Frisk

Under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution, a law enforcement officer generally cannot seize a person without a warrant. *State v. Fuentes*, 183 Wn.2d 149, 157-58, 352 P.3d 152 (2015). One established exception is a *Terry* stop, a brief investigatory detention of a person. *Id.* at 158. Under this exception, an officer may briefly detain a person for questioning without a warrant if the officer has a reasonable suspicion based on specific and articulable facts that the person has been or is about to be engaged in criminal activity. *Id.*

However, without a warrant, an officer who makes a lawful investigatory stop of a person has no general authorization to search that person. *See State v. Russell*, 180 Wn.2d 860, 867, 330

P.3d 151 (2014). An officer may conduct a protective frisk for weapons only if the officer has reasonable grounds, based on specific and articulable facts, to believe that the person is armed and presently dangerous. *Id.* It is enough that the officer reasonably believes that a search should be conducted to protect his or her own safety and the safety of others. *Id.* The officer is not required to be absolutely certain that the person is armed – only a founded suspicion is necessary. *State v. Harrington*, 167 Wn.2d 656, 668, 222 P.3d 92 (2009).

Even if an officer may lawfully frisk a person during an investigatory stop, the scope of the frisk must be limited to protective purposes. *Russell*, 180 Wn.2d at 869. "The frisk must be brief and nonintrusive." *Id.* It generally must be limited to a pat down of the outer clothing to determine if any weapon is present. *State v. Hudson*, 124 Wn.2d 107, 112, 874 P.2d 160 (1994). If the officer feels an object that, based on its size and density, might be a weapon, the officer may take action necessary to examine that object. *Russell*, 180 Wn.2d at 869. But the purpose of the protective frisk cannot be to search for evidence of a crime. *Hudson*, 124 Wn.2d at 112. And once the officer determines that the detained person has no weapon, the frisk must end. *Russell*, 180 Wn.2d at 869-70.

Despite these limitations, when conducting a lawful *Terry* stop and frisk an officer may see other contraband. Under the plain view exception, the officer can seize an item seen in plain view if the officer was conducting a constitutionally permissible search and immediately recognizes that the item was associated with criminal activity. *State v. Weller*, 185 Wn. App. 913, 926, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015). The immediacy requirement asks whether, considering the surrounding circumstances, the officer can reasonably conclude that the item is incriminating evidence. *Id.* If recognition is immediate, the plain view exception

applies and no impermissible invasion of the person's privacy has occurred when the item is seized. *Hudson*, 124 Wn.2d at 114.

When reviewing an officer's decision to conduct a search, we are reluctant to substitute our judgment for an officer's judgment exercised in the field. *Russell*, 180 Wn.2d at 867-68. But we must ensure that there is some basis for determining that the detention and search was not arbitrary or harassing. *Id.* at 868.

Evidence recovered from a frisk following an investigative stop is inadmissible if the initial stop was not lawful, if the officer did not have a reasonable belief that the person detained was armed and dangerous, or if the frisk exceeded its proper scope. *State v. Day*, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007).

B.      INITIATING A *TERRY* FRISK

Fisher concedes that Goode's investigatory stop was lawful. But he argues that Goode's frisk was not justified because she had no reasonable grounds to believe that he was armed and presently dangerous. We hold that the record is not sufficient to determine whether the circumstances justified Goode's frisk and therefore is not sufficient to determine whether Fisher's ineffective assistance of counsel claim has merit.

The record in this case lacks any information about whether Goode had reasonable grounds to believe that Fisher was armed and presently dangerous before she decided to frisk Fisher. Goode did not provide any explanation in her probable cause report, but she also noted that does not include all the facts in that report. Neither party asked Goode at trial whether she had reasonable grounds to believe that Fisher was armed and presently dangerous, which was not

relevant to the trial issues. And because Fisher did not file a suppression motion, the State did not have an opportunity to develop a record on this issue.

We hold that the record is not sufficient to determine whether the circumstances justified Goode's search, and therefore is not sufficient to determine whether the trial court would have granted a motion to suppress the evidence on this basis. Accordingly, we decline to consider Fisher's ineffective assistance of counsel claim based on the initiation of the frisk.

C.    SCOPE OF A *TERRY* FRISK

Fisher argues that Goode's search exceeded the scope of a constitutionally permissible *Terry* frisk both when she (1) lifted his shirt without first completing a pat down of the bulge and (2) removed the baggie from his pocket. We hold that the record is not sufficient to determine whether Goode's search exceeded the scope of a lawful *Terry* frisk when she lifted Fisher's shirt or whether the plain view exception applied when she removed the baggie from his pocket. We therefore hold that the record is not sufficient to determine whether Fisher's ineffective assistance of counsel claim has merit.

1.    Moving Clothing During a *Terry* Frisk

a.    Applicable Case Law

The general rule, recited in multiple Supreme Court cases, is that "[t]he scope of a valid *Terry* frisk is limited to protective purposes." *Russell*, 180 Wn.2d at 869; *see also State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009); *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002). The Supreme Court also has stated repeatedly that the frisk must be "nonintrusive." *Russell*, 180 Wn.2d at 869; *see also Garvin*, 166 Wn.2d at 254; *Day*, 161 Wn.2d

at 895. The frisk is allowed "so long as the search goes no further than necessary for protective purposes." *Day*, 161 Wn.2d at 895.

Two cases have indicated that a valid *Terry* frisk involves only a pat down of a person's clothing. In *Hudson*, the court stated, "A valid weapons frisk is strictly limited in its scope to a *search of the outer clothing; a patdown* to discover weapons which might be used to assault the officer." 124 Wn.2d at 112 (emphasis added). In *State v. Bee Xiong*, the court stated that an officer may perform "a protective frisk *in the nature of a pat-down* in order to ascertain if the suspect is carrying a weapon." 164 Wn.2d 506, 513-14, 191 P.3d 1278 (2008) (emphasis added). Other cases assume that a frisk involves feeling for weapons. *See Russell*, 180 Wn.2d at 869 (referring to when an officer feels an item). Equating a frisk with a pat down is consistent with the premise of *Terry*, which is that " 'officers will be able to detect the presence of weapons through the sense of touch.' " *Hudson*, 124 Wn.2d at 116 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 376, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993)).

In *Hudson*, the court stated that an officer may go beyond a pat down in two situations. First, an officer may reach into the detainee's clothing "where the patdown is inconclusive" – such as when the detainee is wearing heavy clothing – and reaching into the clothing is the "only reasonable course of action." *Hudson*, 124 Wn.2d at 112. Second, an officer who feels an object that might or might not be a weapon can take action necessary to examine it. *Id.* at 113; *see also Russell*, 180 Wn.2d at 869. For example, "the discovery of an unidentified 'bulge' in the course of the patdown would entitle the officer to assure himself that it was not a weapon." *State v. Allen*, 93 Wn.2d 170, 172, 606 P.2d 1235 (1980). But the court assumed that in these situations the officer would first conduct a pat down.

8

On the other hand, no Washington case has expressly addressed whether using some method of determining whether a detainee has a weapon *other than* a pat down is beyond the scope of a valid *Terry* frisk. The State argues that an officer should be able to use another method depending on the particular circumstances of the detention as long as it is limited to protective purposes and is nonintrusive. *See Russell*, 180 Wn.2d at 869. This argument is consistent with a statement by the United States Supreme Court that an officer conducting a *Terry* frisk should employ "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983).

Courts in other jurisdictions have held that a lawful *Terry* frisk is not limited to a pat down search, and that lifting a detainee's shirt is not beyond the scope of a lawful frisk. *United States v. Reyes*, 349 F.3d 219, 225 (5th Cir. 2003); *United States v. Baker*, 78 F.3d 135, 138 (4th Cir. 1996); *United States v. Hill*, 545 F.2d 1191, 1193 (9th Cir. 1976); *Parks v. State*, 2013-KA-00810-COA, 172 So. 3d 1237, 1241 (Miss. Ct. App. 2015); *State v. Michael*, 2013-Ohio-3889, 995 N.E.2d 286, 292-95 (Ct. App. 2013); *State v. Taveras*, 39 A.3d 638, 650 (R.I. 2012).

But other courts have noted that in most cases a *Terry* frisk is limited to the traditional pat down search and have held that lifting the detainee's shirt is beyond the scope of a lawful search when it is more intrusive than a pat down. *United States v. Aquino*, 674 F.3d 918, 925-26 (8th Cir. 2012); *Commonwealth v. Flemming*, 76 Mass. App. Ct. 632, 925 N.E.2d 39, 44 (2010); *State v. Privott*, 203 N.J. 16, 999 A.2d 415, 424 (2010); *see also United States v. Casado*, 303 F.3d 440, 447-49 (2d Cir. 2002) (holding that a pat down search was less intrusive than reaching into the detainee's pocket to remove an item).

9

b.    Analysis

Fisher argues that we should strictly apply the rule in *Hudson* limiting a lawful *Terry* frisk to a pat down of a detainee's outer clothing unless that pat down is inconclusive or reveals an object that might be a weapon.  Under this approach, Goode would have been required to pat down Fisher before taking any additional action.  The State argues that whether an officer can lift a detainee's shirt should depend on the facts and circumstances of each case.

But the record does not indicate whether Goode patted down the bulge in Fisher's pocket before she lifted his shirt.  Goode's report stated that "as I patted [Fisher] down for weapons I lifted his shirt to expose his right front pocket" without stating whether she touched the bulge during the pat down.  CP at 97.  At trial she stated that she patted down Fisher's back area and then when she went to the front she moved his shirt.  The prosecutor next asked why she moved the shirt "upon *feeling* a bulge," and she did not object to that characterization.  RP at 125 (emphasis added).

The record is unclear about when and why Goode lifted Fisher's shirt.  She may have patted down the bulge first and thought it might be weapon, or she may not have patted down the bulge.  And because Fisher did not file a suppression motion, the State did not have an opportunity to develop a record on this issue.

We hold that the record is insufficient to determine whether Goode could lawfully lift Fisher's shirt, and therefore whether the trial court would have granted a motion to suppress the evidence on this basis.  Accordingly, we decline to consider Fisher's ineffective assistance of counsel claim based on Goode's lifting of Fisher's shirt.

2. Seizing an Item During a *Terry* Frisk

Fisher argues that Goode exceeded the scope of a lawful frisk by removing the bag from his pocket when it clearly was not a weapon. He claims that the plain view exception did not exempt Goode's search from the warrant requirement.[2] We hold that the record is not sufficient to determine whether Goode could lawfully seize the bag under the plain view exception and therefore to determine whether Fisher's ineffective assistance of counsel claim has merit.

Goode's written report indicated that once she lifted Fisher's shirt she saw a plastic bag containing heroin. The report stated, "I saw a 'dime' bag sticking out of the small inner pocket with a dark colored substance inside." CP at 97. Goode further stated that she "immediately seized the bag and based on my training and experience believed the substance to be heroin." CP at 97. These statements support application of the plain view exception. They suggest that she was able to see the bag and immediately recognized the heroin in it during the course of her frisk.

However, the record is insufficient to resolve this question for two reasons. First, the plain view exception applies only when an officer is conducting a constitutionally permissible search. *Weller*, 185 Wn. App. at 926. As discussed above, the record does not show whether Goode's *Terry* search was proper. Second, Goode's trial testimony was somewhat ambiguous about when she could see and recognize the heroin.

> Q And your testimony is that you found a plastic baggie in that coin pocket of the jeans he was wearing?
> A Yes.

---

[2] Fisher also argues that the "plain feel" exception does not apply. *See Garvin*, 166 Wn.2d at 251-54 (discussing a "plain touch" exception to the warrant requirement). Because it is unclear whether Goode patted down Fisher's pocket, the record is insufficient to determine whether the plain feel exception applies.

Q   During this pat down?
A   Yes.
Q   *Removed it and saw* a black substance inside which you believed to be heroin?
A   Correct.

RP at 133-34 (emphasis added).  This testimony implies that she may not have seen the heroin until she removed the bag from Fisher's pocket.  If that was the case, the plain view doctrine would not apply.

The record in this case is unclear about how Goode discovered the heroin.  She may have seen the heroin as soon as she lifted the shirt, or she may have seen the heroin only after removing the baggie from Fisher's pocket.  And because Fisher did not file a suppression motion, the State did not have an opportunity to develop a record on this issue.

We hold that the record is insufficient to determine whether the circumstances justified Goode's seizure of the bag, and therefore whether the trial court would have granted a motion to suppress the evidence on this basis.  Accordingly, we decline to consider Fisher's ineffective assistance of counsel claim based on the seizure of the bag.

D.      APPELLATE COSTS

Fisher asks that this court refrain from awarding appellate costs if the State seeks them. We refer the issue of appellate costs to a court commissioner under RAP 14.2 if the State decides to file a cost bill and if Fisher objects to that cost bill.

                            CONCLUSION

The record is insufficient for us to determine whether Fisher received ineffective assistance of counsel because of defense counsel's failure to move to suppress the heroin and cash Goode discovered during her search and statements he made to Goode.  Therefore, we

No. 48907-4-II

decline to consider Fisher's ineffective assistance of counsel claims. The appropriate means for

Fisher to obtain review is to file a personal restraint petition. *See McFarland*, 127 Wn.2d at 335.

We affirm Fisher's conviction.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

LEE, J.

SUTTON, J.